UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA | ORDER |
| -vs- | 6:10-CR-06166-CJS-1<br>6:21-CV-06496-CJS |
| ANDREW WRIGHT,<br>                               Defendant. | |

_____

INTRODUCTION

On January 16, 2020, the United States Court of Appeals for the Second Circuit issued a Mandate, dismissing Wright's direct appeal (which had been filed years after his conviction) as untimely, and remanding the matter to this Court with instructions to "solicit consent from Wright to convert [his] August 25, 2017 notice of appeal into a petition for habeas relief" under 28 U.S.C. § 2255, and, assuming that Wright gave his consent, "to assess whether [such a petition] would be timely under 28 U.S.C. § 2255(f)(4), with or without application of equitable tolling." Wright subsequently gave such consent, and the Section 2255 motion is now before the Court for a determination as to whether it should be deemed timely under 28 U.S.C. § 2255(f)(4), with or without application of equitable tolling. For the reasons discussed below, the Section 2255 motion is dismissed as untimely.

1

BACKGROUND

The reader is presumed to be familiar with the history of this action. The Second Circuit's decision remanding the action partially summarized the relevant facts, in pertinent part, as follows:

> [F]ollowing a two-day trial in November 2011[, a] jury convicted [Wright] on [two] counts of assault on a law enforcement officer, in violation of 18 U.S.C. § 111(a), (b).
>
> On May 2, 2014, Wright appeared before the district court for sentencing. Although his lawyers had attempted to review his Pre-Sentence Report ("PSR") with him, he declined to read it and explicitly affirmed that denial to the district court, saying he was "not worried about the sentence." Appendix ("App'x") 40. After reviewing the PSR and the sentencing factors under 18 U.S.C. § 3553, the district court sentenced Wright to two concurrent terms of 240 months' imprisonment—a sentence within the range the district court calculated under the United States Sentencing Guidelines. Wright was also ordered to pay mandatory special assessments totaling $200, and fines totaling $1,000.
>
> After pronouncing Wright's sentence, the district court asked Wright if he had any questions. Wright said that he would not be able to afford his lawyer, Richard M. Roberts ("Roberts"), at the next stage of the proceedings, but that he was "going to appeal this case." App'x 51. The district court explained the process of attorney withdrawal and how Wright could get new counsel from [the Second Circuit] on appeal. The docket entry detailing the sentencing proceeding reflects that the district court granted Roberts's "oral application to withdraw as defendant's counsel for the appeal." No. 10-cr-6166 (W.D.N.Y. May 2, 2014), ECF No. 72. Nevertheless, the district court asked that Roberts, "before [he is] relieved, file a Notice of Appeal" in Wright's case. App'x 52.
>
> But Roberts did not file a notice of appeal on Wright's behalf. No notice of appeal was filed until several years later, on August 25, 2017, when Wright himself filed a notice of appeal . . . *pro se*. On July 20, 2018, the government moved to dismiss Wright's appeal as untimely.

ECF No. 83 at pp. 5-6.

As mentioned above, at sentencing this Court "explained [to Wright] the process of attorney withdrawal and how [he] could get new counsel from the [Second Circuit] on appeal." More specifically, at the close of the sentencing, the following discussion took place:

> THE COURT: Mr. Wright, that is the sentence of the Court. I'm advising you, pursuant to 32(j) one of the Federal Rules of Criminal Procedure, that you have a right to appeal the sentence imposed. Do you have a question? Go ahead.
>
> THE DEFENDANT: Yeah. Your Honor, I just say that I couldn't afford Mr. Roberts in next trial. I'm going to appeal this case.
>
> THE COURT: You know what? I think it makes most sense. I don't know, Mr. Roberts, if you thought about it, I want to bring you up to date, I hate to say companion case, the other case, Mr. Konoski, counsel has asked for a motion to withdraw.[1] Mr. Wright is in agreement with that. I informed him, on motions to withdraw, what usually happens is, while I can allow the attorney to withdraw, the Second Circuit, upon your request, Mr. Wright, would appoint a lawyer and they appoint lawyers that specialize on criminal appeals and give a fresh look of what happened. Is that your request?
>
> THE DEFENDANT: My bad for not bringing that up to Mr. Roberts.
>
> THE COURT: Is that your request, Mr. Roberts?
>
> MR. ROBERTS: It would be.
>
> THE COURT: I think that makes most sense. As we discussed, and I did check with the Court of Appeals, all you need to do is apply to the Second Circuit for CJA counsel. And here is what you need to do. *So you need to write the Second Circuit asking for assigned counsel. What I would ask you to do, Mr. Roberts, before you are relieved, file a Notice of Appeal. He'll file the Notice of Appeal. You request from the Second Circuit a lawyer and indicate in your letter that the Court, myself, has found you eligible for assigned counsel and that you previously, in another case, have appointed counsel, okay?*

---

[1] Referring to the other case against Wright and several co-defendants, involving their participation in a marijuana distribution ring and a triple homicide, 6:10-CR-6128-CJS.

3

> THE DEFENDANT: *Yeah*.
>
> THE COURT: That is what I was told was the procedure, and they will appoint you counsel. That is the sentence of the Court.

ECF No. 76 at pp. 15-16 (emphasis added).  However, Defendant did not apply to the Second Circuit for appointment of CJA counsel in this action until February 6, 2018, which was three years and nine months after sentencing. *See*, Second Circuit Docket, Case No. 17-2715, Entry No. 29.

The Second Circuit eventually granted the Government's application to dismiss the appeal as untimely, and remanded the matter to this Court, with instructions to "solicit consent from Wright to convert [his] August 25, 2017 notice of appeal into a petition for habeas relief" under 28 U.S.C. § 2255, and, assuming that Wright gave his consent, "to assess whether [such a petition] would be timely under 28 U.S.C. § 2255(f)(4), with or without application of equitable tolling."  Wright subsequently gave such consent, and the Section 2255 motion is now before the Court for a determination as to whether it should be deemed timely under 28 U.S.C. § 2255(f)(4), with or without application of equitable tolling.

The Second Circuit panel's decision provided some general guidance for determining whether, assuming Wright consented to the conversion, his Section 2255 motion could be found timely, stating, in pertinent part:

> AEDPA imposes a one-year statute of limitations on motions to set aside sentences imposed, *inter alia*, "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a), (f). This one year runs from the last of a number of "triggering events," *Rivas v. Fischer*, 687 F.3d 514, 533 (2d Cir. 2012). These include, as relevant to Wright's case, "(1) the date on which the judgment of conviction [became] final," and "(4) the date on which the

4

facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1), (4).

When no notice of appeal (or other post-conviction motion) is filed in a defendant's case, the Federal Rules of Appellate Procedure provide that the conviction becomes final fourteen days after judgment is entered. See FRAP 4(b)(1)(A)(i). Pursuant to 28 U.S.C. § 2255(f)(1), the statute of limitations to file a habeas petition runs one year from that day. In Wright's case, this date came and went, and no petition was filed.

In cases in which an attorney fails to file a requested notice of appeal on behalf of her client, however, we have allowed that "the date on which the facts supporting [the defendant's claim of ineffective assistance] could have been discovered," see 28 U.S.C. § 2255(f)(4), may very well be later than the day the judgment became final. In *Wims v. United States*, 225 F.3d 186 (2d Cir. 2000), defendant John C. Wims pled guilty, but told his attorney that "a reduction in his sentence was worth pursuing" and presumed his attorney would file an appeal. *Id*. at 188 (internal quotation marks and brackets omitted). Nevertheless, Wims's attorney failed to file a notice of appeal, and thus his conviction became final within several weeks, pursuant to FRAP 4(b). Approximately 16 months later, Wims requested the docket sheet in his case, at which point he discovered that no appeal had been filed. *See id*. Wims then filed a *pro se* motion under § 2255 claiming ineffective assistance, which was received by the district court about 17 months after Wims's conviction became final.

This Court determined that Wims's petition was timely "if his claim for habeas relief accrued no earlier than one year prior to the date of filing" in the district court. *Id*. at 189. Accordingly, it was error for the district court to deem § 2255(f)(4) a method for "extending" the statute of limitations, rather than as a "reset[]" of the statute of limitations, "moving it from the time when the conviction became final, to the later date on which the particular claim accrued." *Id*. at 189–90 (internal quotation marks and brackets omitted). Given that the statute of limitations would "reset" and allow for an additional year following Wims's discovery of his attorney's ineffective assistance, <u>we concluded that "[t]he proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed</u>." *Id*. at 190.

We noted in *Wims* that the petitioner was clearly not required to discover that no appeal had been filed "the very day on which [his] conviction became

5

final absent appeal," and that determining the precise date on which a defendant should have discovered his attorney's failure to appeal is therefore "a fact-specific issue." *Id*. Accordingly, we remanded for the district court to consider "when, in exercising due diligence, Wims would have discovered his counsel's failure to appeal," giving consideration to, *inter alia*, "the details of Wims' post-sentence conversation with his lawyer and . . . the conditions of his confinement in the period after" his conviction became final. *Id*. at 190–91. Nevertheless, we determined in the first instance that a five-month delay in learning of an attorney's failure to appeal "is not so clearly unreasonable that it plainly appears from the face of [an] appellant's petition and supporting papers that he is barred from habeas relief." *Id*. at 191.

In addition, the deadlines created by 28 U.S.C. § 2255(f) are not jurisdictional—"AEDPA's statute of limitations . . . 'does not set forth an inflexible rule requiring dismissal whenever its clock has run.'" *Rivas*, 687 F.3d at 537 (quoting *Holland v. Florida*, 560 U.S. 631, 645 (2010) (internal quotation marks omitted)). This is because although "AEDPA seeks to eliminate delays in the federal habeas review process," it does not do so at the expense of "basic habeas corpus principles," or prior law that a "petition's timeliness [has] always [been] determined under equitable principles." *Holland*, 560 U.S. at 648. As a result, <u>even in the wake of AEDPA, a petitioner is entitled to equitable tolling of the one year statute of limitations if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing</u>." *Id*. at 649 (internal quotation marks omitted).

To warrant equitable tolling, "the circumstances of a case must be 'extraordinary.'" *Id*. at 652. When determining what constitutes "extraordinary" circumstances, we have observed that "the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008). For example, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*, 560 U.S. at 651–52 (internal quotation marks omitted). This is because "a lawyer is the agent of his client, [so] the client generally must bear the risk of attorney error." *Rivas*, 687 F.3d at 538 (internal quotation marks omitted). But when "attorney negligence . . . [is] so egregious as to amount to an effective abandonment of the attorney-client relationship," extraordinary

6

> circumstances may be found. *Id*.; *see also Holland*, 560 U.S. at 652 (finding extraordinary circumstances when attorney "failed to file [defendant's] federal petition on time despite [defendant's] many letters that repeatedly emphasized the importance of his doing so" and "failed to communicate with his client over a period of years, despite various pleas from [defendant] that [the lawyer] respond to his letters"); *Maples v. Thomas*, 565 U.S. 266, 281 (2012) (concluding, in context of state procedural default, that extraordinary circumstances existed as "[a] markedly different situation is presented . . . when an attorney abandons his client without notice, and thereby occasions the default"); *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (distinguishing "extraordinary" actions—e.g., failure to file a petition, do any research, or meet with a client—from "simple mistakes" that do not warrant equitable tolling).
>
> Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling. "In the attorney incompetence context, . . . the reasonable diligence inquiry focuses on the purpose for which the petitioner retained the lawyer, his ability to evaluate the lawyer's performance, his financial and logistical ability to consult other lawyers or obtain new representation, and his ability to comprehend legal materials and file the petition on his own." *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004). The only diligence required for the application of equitable tolling is "reasonable diligence"—we do not require "maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal quotation marks omitted). Even so, "we expect [even] *pro se* petitioners to know when the limitations period expires and to understand the need to file a [habeas] motion within that limitations period." *Doe*, 391 F.3d at 177.

ECF No. 83 at pp. 12-18.

The Circuit Panel's decision observed that that Wright would need to show that his motion was timely under § 2255(f)(4), with or without equitable tolling, since, otherwise, the motion "clearly would not have been timely under § 2255(f)(1)," "given that his conviction became final fourteen days after it was issued, [meaning that] the statute of limitations under § 2255(f)(1) expired on May 22, 2015." ECF No. 83 at p. 20.  The Circuit panel reiterated that for Wright to succeed, he would need to show "either (1) the fact that

his attorney did not file a notice of appeal must not have been discoverable using due diligence prior to August 25, 2016, or (2) [he] must qualify for equitable tolling for some period of time between the day by which he *should* have discovered the facts of his ineffective assistance claim and the latest possible beginning of the § 2255(f)(4) limitations period, *i.e.*, August 25, 2016." *Id*. at 21 (emphasis in original).

This Court subsequently issued an Order (ECF No. 85) directing Wright to indicate, on or before July 30, 2021, whether he wanted his Notice of Appeal converted to a Section 2255 Motion, and on July 23, 2021, Wright indicated that he did. *See*, ECF No. 87.

In that regard, although the Second Circuit's Mandate referred to "converting" Wright's Notice of Appeal "into a petition for habeas relief," his Notice of Appeal actually contained neither a substantive statement of fact or law nor any argument, but merely indicated his intent to appeal for unspecified reasons. Wright's submission indicating his desire to convert his Notice of Appeal to a Section 2255 Motion (ECF No. 87), therefore, constitutes his actual Section 2255 Motion, or, at least, his argument for why a Section 2255 Motion filed by him on August 25, 2017, should be deemed timely under 28 U.S.C. § 2255(f)(4), with or without equitable tolling. In that regard, Wright's submission states, in pertinent part:

> I did not become aware of my lawyer's failure to file a Notice of Appeal in my case, it just so happens that I learned that an appeal process should not take this long. As a result I wrote the Court with my own Notice of Appeal.
>
> I do object to Court's decision to place the burden upon me to explain why I shouldn't have to suffer from the clear ineffectiveness of my lawyer.
>
> "Timeliness under 28:2255(f)(4)"- without the application of equitable tolling. As stated earlier I do not understand, I relied on the Constitution and the

8

> Court to provide me with effective assistance of counsel, now I'm in a position where I'm forced to help myself with a limited legal education. To deny me due process at this point will deprive me of my right to appeal my conviction. Under 28:2255(f)(4)- the 1 year limitation runs from the date on which I found out my lawyer had abandoned me. I didn't find this out until I wrote the Court to obtain my appeal, therefore the time limitation should run from the day I first wrote the Court about my notice of appeal. Therefore in the event that the Notice of Appeal is converted into a Habeas petition it should be considered timely.
>
> "Timeliness under 28:2255(f)(4)- with the application of equitable tolling. This is a rare case where not only did the defendant request counsel to file a notice of appeal, but the Court made this request also, to which the lawyer agreed to file the notice of appeal. In light of the Court's and the Defendant's request the lawyer failed to file the notice. To be specific the Defendant's counsel completely and clearly abandoned him. *See, Rivas v. Fischer*, 687 F.3d 514, 2012 U.S. App. LEXIS 13974. [(]"Rather, in order to rise to the level necessary to constitute an extraordinary circumstance, for purposes of tolling 2254's limitations period, it must be so egregious as to amount to an effective abandonment of the attorney-client relationship."[)] In light of *Rivas* the Court should apply equitable tolling, it's clear that Mr. Wright was abandoned by his attorney.

ECF No. 87. Wright's typed submission contained a line for him to sign and to swear to the truth of the statement, but he submitted it unsigned and unsworn. *Id*.

The Government opposes the Section 2255 motion, contending that it is untimely under 28 U.S.C. § 2255(f)(4), and that equitable tolling does not apply, since Wright did not act with reasonable diligence. As evidence of this alleged lack of diligence, the Governments notes, first, that despite this Court's instructions to Wright at sentencing, he didn't apply for appointment of CJA appellate counsel until three years later. The Government further indicates that this was despite the fact that Wright was, during the same period, pursuing another criminal appeal before the Second Circuit, and was thus aware of the appeal process:

9

> Wright failed to apply for appointment of CJA counsel after this Court found that he was eligible and expressly counseled him to so apply. Moreover, while he was incarcerated, he was also pursuing the appeal of his other conviction and sentence on the murder and marijuana conspiracy case, under this Court's docket No. 10-CR-6128 and the Second Circuit's docket No. 14-1716. Thus, Wright had knowledge as to the appellate process and had ample opportunity and access to resources which, had he attempted to do so, would have uncovered the fact that his counsel had not filed a notice of appeal. However, he did not do so.

Govt's Memo of Law, ECF No. 89 at p. 6; *see also, id*. at p. 7 ("Wright provides no explanation whatsoever for why he failed to check on the status of his appeal for three years after he though it had been filed.").

Wright filed a reply to the Government's response, in which he asserts, first, that the Government's emphasis on his alleged lack of diligence is "misplaced," since the Court requested his counsel to file a notice of appeal, and counsel failed to do so, thereby "abandoning" him. ECF No. 90 at p. 1-2 ("How is the movant not supposed to know [sic] that his lawyer did not keep his word and honor the Court's request to file a notice of appeal."). Alternatively, Wright contends that he was diligent in pursuing his appeal, since "2 to 3 years is not unreasonable for people under their circumstances to realize their appeal was not filed by their lawyers." *Id*. at p. 2. Wright further posits that he should be held to a lesser standard below reasonable diligence, since he "is not a U.S. citizen," and therefore "may not be fully knowledgeable of his constitutional rights or even the basic workings of the United States Judicial System." *Id*. at p. 3.

## ANALYSIS

### Defendant's *Pro Se* Status

Since Wright is proceeding *pro se*, the Court has construed his submissions

liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).  Liberally construing Wright's Section 2255 motion, he maintains that his Section 2255 motion, filed on August 25, 2017 –three years, three months, and seventeen days after the judgment was filed—was timely filed under 28 U.S.C. § 2255(f)(4), with or without the application of equitable tolling.  He maintains, in that regard, that he never actually learned that his attorney, Roberts, had not filed a notice of appeal, until after he had filed his notice of appeal, and that he filed his own notice of appeal after "learning," through unspecified means, "that an appeal process should not take this long." He contends that the limitations period under § 2255(f)(4) should not have accrued until he actually learned that Roberts had not filed a notice of appeal.   He further maintains that he was diligent prior to such discovery, since the Court had directed Roberts to file a notice of appeal, and he assumed that Roberts would do so.  Alternatively, he contends that equitable tolling should apply, since Roberts "abandoned" him by failing to file a notice of appeal, and since a 3-year delay in discovering that fact was not unreasonable. Additionally, he argues that he is not a U.S. Citizen, and therefore should not be expected to know the workings of the appeal process.

<u>Section 2255 Principles</u>

Wright is proceeding under 28 U.S.C. § 2255, which provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  "[A] collateral attack on a final judgment in a federal criminal case

is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.1995) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

<u>An Evidentiary Hearing is Not Required</u>

The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b). Here, the Court finds that a full evidentiary hearing is not required because there are no material factual disputes, and the record conclusively shows that Wright is not entitled to relief.

<u>Wright Has Not Shown that his Motion is Timely</u>

The Court finds that Wright reasonably should have discovered that no notice of appeal had been filed more than one year before he filed the instant motion, making the motion untimely under § 2255(f)(4). The Court further finds that equitable tolling does not apply, since, even assuming that Robert's failure to file a notice of appeal was an extraordinary circumstance, Wright did not subsequently act with reasonable diligence.

As a preliminary matter, the Court does not find credible Wright's explanation for how he came to file his notice of appeal/2255 motion. In particular, he claims that he never learned that Roberts had failed to file a notice of appeal until after he filed his own *pro se* notice of appeal. In that regard, he claims that he just learned, somehow, that appeals "should not take that long," and decided to file his own notice of appeal (which

12

has now been converted to his Section 2255 motion). However, it seems unlikely that Wright would have done as he claims, without first contacting Roberts or the Court, to check on the status of the appeal that he claims to have believed was pending. Indeed, even assuming that Wright felt that his appeal was taking too long, that by itself would not have alerted him to the fact that Roberts had never even filed a notice of appeal. Consequently, it seems more likely that at some prior point Wright learned that Roberts had not filed a notice of appeal. Wright's unwillingness to say when that was weighs against him in this analysis. Wright's explanation on this point also seems dubious since, as discussed further below, he had no reason to think that *any* attorney was pursuing an appeal on his behalf during the relevant period, since he had never applied to the Second Circuit for appointment of appellate counsel.

Moreover, even assuming that Wright's explanation on that point is truthful, it does not demonstrate diligence. In that regard, Wright primarily contends that it was reasonable for him to wait over three years before filing his own notice of appeal, since the Court had directed Roberts to file a notice of appeal, and he was entitled to assume that Roberts had done so.

However, the Court disagrees, and finds that if Wright had exercised reasonable diligence, he would have learned about Robert's failure to file the notice of appeal well more than a year before he filed his notice of appeal/Section 2255 motion.

In this regard, Wright has not attempted to show that he personally exercised reasonable diligence at any point. For example, he does not claim that he ever attempted to check with anyone about the status of his appeal.

13

Nor does the Court find that equitable tolling applies during the period between when Wright reasonably should have learned about Roberts' error and the date he filed his notice of appeal/Section 2255 motion. Again, Wright doesn't actually attempt to demonstrate that he acted diligently; instead, he just argues that Roberts abandoned him, and therefore that equitable tolling should apply. However, even if the Court assumes that Robert's failure to file a notice of appeal under these circumstances could amount to an extraordinary circumstance for purposes of equitable tolling, Wright must still demonstrate a causal relationship between Robert's error and the lateness of his filing, and that he acted with reasonable diligence:

> To show that extraordinary circumstances "prevented" him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances. Hence, if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing. In a case where the alleged extraordinary circumstances ceased early in the limitations period, we inquire whether the petitioner diligently pursued his application in the time remaining.

*Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (citations and internal quotation marks omitted).

Here, as the Government maintains, the circumstances of the case as a whole show that Wright did not act with reasonable diligence, which breaks any chain of causation between Robert's error and Wright's late filing. That is, Wright took no action for years *after* Roberts failed to file a notice of appeal.

Wrights's inaction in that regard was all the more unreasonable, since it was contrary to this Court's instructions to him at sentencing. In particular, at the same time that the Court directed Roberts to file a notice of appeal, it also directed Wright to apply to the Second Circuit for appointment of CJA appellate counsel. However, Wright never did so, until February 6, 2018, which was three years and nine months after sentencing. At sentencing, the Court told Wright that Roberts would file a notice of appeal, after which Roberts would be relieved as counsel, and Wright would need to request a new attorney. Since Wright claims that he assumed Roberts had filed a notice of appeal, then he should have also assumed that Roberts was relieved as counsel, and would not be preparing the appeal. The subsequent passage of years, without Wright hearing anything further about an appeal, should have reminded him of the fact that he needed to request a new attorney. Had he done as he was directed by the Court, he would have learned, upon filing his motion for appointment of appellate counsel, that no appeal was pending.

Further, as to this point, and to the unreasonable nature of Wright's inaction, the Government correctly points out that Wright was, during the relevant period, pursuing a separate criminal appeal before the Second Circuit of other his other conviction before this Court, for which the Court sentenced him on the same day he was sentenced in this action. The Second Circuit's docket for that other appeal, Case No. 14-1027, shows that on July 11, 2014, the Circuit granted the motion by Wright's former counsel, Bryan Konoski ("Konoski"), to be relieved as counsel, and appointed new CJA appellate counsel for Wright, Lawrence Gerzog ("Gerzog"). Second Circuit Docket No. 56. Presumably, Konoski and/or Gerzog notified Wright of this development, which should have also reminded Wright of the need for him to apply for new CJA counsel in this action.

15

Wright has offered no explanation for his inattention to this action during the period at issue, other than perhaps his bald assertion that he should be held to some lesser standard of diligence since he is not a U.S. citizen. However, the Court finds that contention meritless, since Wright has offered no explanation for why his citizenship would be relevant to this inquiry. In that regard, the Court observes that Wright, who was forty-four years of age at sentencing, speaks fluent English; was raised in both Jamaica and New Jersey; has spent his adult life in the United States; and undoubtedly has far more experience than the average U.S. citizen with the workings of the U.S. criminal justice system. *See*, Presentence Investigation Report, ECF No. 71 at pp. 2, 7-11, 15 (detailing Wright's criminal history).

In sum, the Court finds that Wright has not shown "either (1) the fact that his attorney did not file a notice of appeal [was not] discoverable using due diligence prior to August 25, 2016, or (2) [that he qualifies] for equitable tolling for some period of time between the day by which he should have discovered the facts of his ineffective assistance claim and the latest possible beginning of the § 2255(f)(4) limitations period, i.e., August 25, 2016." Second Circuit Mandate, ECF No. 83 at p. 21. Consequently, his Section 2255 motion must be dismissed as untimely.

CONCLUSION

Wright's application under 28 U.S.C. § 2255 (ECF No. 87) is denied as untimely. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Wright has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this

Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk is directed to close the related civil action, 6:21-CV-6496 CJS.

    SO ORDERED.

Dated: Rochester, New York
       July 30, 2025

                         ENTER:

                         CHARLES J. SIRAGUSA
                         United States District Judge